**Not for Publication**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MARVIN A.G., | : | |
| | : | Civil Action No. 20-1689 (ES) |
| Petitioner, | : | |
| | : | |
| v. | : | OPINION |
| | : | |
| THOMAS DECKER, *et al.*, | : | |
| | : | |
| Respondents. | : | |

**SALAS, DISTRICT JUDGE**

Before the Court is petitioner Marvin A.G.'s[1] ("Petitioner") request to convert the Court's April 14, 2020 temporary restraining order to a preliminary injunction. (D.E. No. 45 ("Mov. Br.")). Respondents oppose the request (D.E. No. 47 ("Opp. Br.")), and Petitioner filed a reply (D.E. No. 49 ("Reply Br.")). After considering the parties' submissions and hearing oral argument on June 12, 2020, the Court GRANTS Petitioner's request for a preliminary injunction.

**I.   Background**

    **A.   Factual and Procedural Background**

Petitioner is a 38-year-old man who suffers from Crohn's disease, ulcerative colitis, hypertension, and depressive disorder. (D.E. No. 48-1 ("Second Amended Petition" or "SAP")[2]

---

[1]     This Opinion identifies Petitioner by his first name and the first initial of his surname in light of certain privacy concerns associated with § 2241 immigration cases. This manner of identification comports with the Judicial Conference of the United States' Committee on Court Administration and Case Management's recommendations.

[2]     Petitioner requested leave to file the Second Amended Petition on June 9, 2020 (D.E. No. 48), and because Respondents did not oppose the request, (D.E. No. 56), the Court granted it, (D.E. No. 58). The Second Amended Petition adds allegations about Petitioner's hypertension and depressive disorder that were not included in the amended petition. (*See* D.E. No. 56-1). Although Respondents had the opportunity to respond to these allegations at oral argument, they have not yet answered the Second Amended Petition. Thus, while the Court will reference the

¶ 1). Petitioner has lived in New York for over 18 years with his 4-year-old U.S. citizen son, and U.S. citizen wife of almost five years. (*Id.*).

On June 11, 2018, Petitioner was transferred from criminal custody to Immigration and Customs Enforcement ("ICE") custody after serving approximately 16 months for sexual abuse in the first degree in violation of N.Y. Penal Law § 130.65.3 and rape in the third degree in violation of N.Y. Penal Law § 130.25. (SAP ¶¶ 25–26).[3] The Department of Homeland Security charged Petitioner as removable for his presence in the United States without being admitted or paroled, pursuant to Immigration and Nationality Act § 212(a)(6)(A)(i). (*Id.* ¶ 26).

On February 18, 2020, Petitioner's original petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 was transferred to this Court from the Southern District of New York. (D.E. Nos. 5 & 6). On March 12, 2020, the Court granted Petitioner's motion to file an amended petition to update the Court on new developments and to add a claim related to the outbreak of the COVID-19 pandemic. (D.E. Nos. 9 & 11). Petitioner raised three grounds for relief in his amended petition: (i) that his 20-month mandatory detention under §1226(c) had become unconstitutionally prolonged; (ii) that the Rehabilitation Act requires reasonable accommodations be made for Petitioner's disabilities in order to ensure equal and effective access to his immigration proceedings, and that Respondents have violated the Rehabilitation Act; and (iii) that, based on the COVID-19 pandemic and Petitioner's underlying medical conditions, his conditions of

---

relevant facts from the Second Amended Petition, its ruling is based on the medical conditions that were the basis of the Court's temporary restraining order—ones which Respondents have had ample opportunity to address.

[3] According to Petitioner, his only other contact with the criminal justice system was in 2007 when he pled guilty to a non-criminal disorderly conduct violation and attempted possession of a controlled substance in the seventh degree. (SAP ¶ 25).

confinement constitute a violation of his due process rights.  (*See generally* D.E. No. 9-1).

On March 29, 2020, Petitioner filed a motion for a temporary restraining order requesting that Petitioner be released from immigration custody based on the extraordinary circumstances of the COVID-19 pandemic and his underlying medical conditions.  (*See* D.E. No. 14).[4]  On April 14, 2020, after considering the parties' submissions and hearing oral argument on the motion for a temporary restraining order, the Court entered an Order granting Petitioner's motion for a temporary restraining order and releasing him from immigration detention subject to certain conditions.  (D.E. No. 32).  The temporary restraining order was set to expire on April 27, 2020, but pursuant to Federal Rule of Civil Procedure 65(b)(2), the parties consented to two extensions of the temporary restraining order, postponing the need for a preliminary injunction hearing.  (D.E. Nos. 33, 34, 38 & 39).  On May 22, 2020, the parties informed the Court they were not able to reach an accord as to whether argument on the preliminary injunction was necessary and consented to another extension of the temporary restraining order during the pendency of the briefing schedule.  (D.E. Nos. 40 & 41).  The Court held an oral argument on the preliminary injunction motion on June 12, 2020, and with the parties' consent, extended the temporary restraining order once more to allow the Court time to consider new issues raised by both sides and to evaluate the complex legal issues presented by the motion for a preliminary injunction.  (D.E. Nos. 55 & 57).

---

[4]     In Respondents' opposition to the motion for a temporary restraining order, they indicated that they did not oppose the Court granting a bond hearing for Petitioner.  (D.E. No. 20 at 8).  Thus, the Court ordered a bond hearing for Petitioner (D.E. No. 21), but because the Immigration Judge denied bond, the Court proceeded to evaluate the request for a temporary restraining order.  (D.E. Nos. 25 & 26).

## II. Jurisdiction

Pursuant to 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner when he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). Here, Petitioner is currently detained in a locality within this Court's jurisdiction and by a custodian located within the Court's jurisdiction. (SAP ¶ 6). The Second Amended Petition and application for a preliminary injunction assert that Petitioner's continued detention violates the Due Process Clause of the Fifth and Fourteenth Amendments to the Constitution. Thus, this Court has habeas jurisdiction. *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494–95 (1973); *see also Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

In their opposition to the request for a preliminary injunction, Respondents argue that the Court lacks subject matter jurisdiction to consider Petitioner's claims under § 2241. (Opp. Br. at 9–11). They further argue that, even if the Court does have habeas jurisdiction, release is not the proper remedy; instead, the remedy should be a change in the allegedly unconstitutional conditions. (*Id.* at 11–12). In support of this argument, Respondents accurately state that conditions of confinement claims, like the ones Petitioner asserts, are traditionally brought through a civil rights complaint pursuant to 42 U.S.C. § 1983. *See, e.g.*, *Camacho Lopez v. Lowe*, No. 20-0563, 2020 WL 1689874, at *4–6 (M.D. Pa. Apr. 7, 2020). Conversely, challenges to "the fact or length of confinement" are properly brought in a habeas corpus petition. *See Tedford v. Hepting*, 990 F.2d 745, 748 (3d Cir. 1993) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 494

4

(1973)). Here, although Petitioner brings claims traditionally asserted through a civil rights complaint, he seeks immediate release from ICE custody, which is a remedy available through a habeas petition. *See, e.g.*, *Preiser*, 411 U.S. at 494; *Leamer v. Fauver*, 288 F.3d 532, 540 (3d Cir. 2002); *Camacho Lopez*, 2020 WL 1689874, at *4 (citing *Preiser*, 411 U.S. at 500) ("When a petitioner seeks immediate release from custody, the 'sole federal remedy' lies in habeas corpus").

There is currently no Third Circuit or Supreme Court decision that directly addresses whether a conditions of confinement claim may be raised in a habeas corpus petition. *See Camacho Lopez*, 2020 WL 1689874, at *5; *Jose S.J. v. Decker*, No. 20-6052, D.E. No. 32 at 8–18 (D.N.J. June 9, 2020); *see also Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 241–42 (3d Cir. 2005). However, the Supreme Court has stated that "[w]hen a prisoner is put under additional and unconstitutional restraints during his lawful custody, it is arguable that habeas corpus will lie to remove the restraints making custody illegal." *Preiser*, 411 U.S. at 499; *see also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1862–63 (2017). Similarly, the Third Circuit has alluded to the possibility of a "habeas attack on the conditions of confinement," which would be "cognizable in a federal habeas action only in extreme cases." *Ali v. Gibson*, 572 F.2d 971, 975 n.8 (3d Cir. 1978). Moreover, recent COVID-19 caselaw within this Circuit has been largely consistent in finding that an immigration detainee may challenge the conditions of his confinement through a Section 2241 petition. *See e.g.*, *Carmen R. v. Decker*, No. 20-3875, 2020 WL 2029337, at *5 (D.N.J. Apr. 28, 2020) (collecting cases); *Thakker v. Doll*, No. 20-480, 2020 WL 2025384, at *2 (M.D. Pa. Apr. 27, 2020) (collecting cases). Many of these courts have also determined that, in light of the extraordinary circumstances posed by COVID-19, release via temporary restraining orders or preliminary injunctions was the proper remedy for immigration detainees whose

5

conditions of confinement were found to be unduly punitive in light of the COVID-19 pandemic and their underlying medical conditions. *Jose M.C. v. Tsoukaris*, No. 20-6236, 2020 WL 3249097, at *5 (D.N.J. June 16, 2020) (collecting cases).

In light of these considerations, the Court joins the line of cases that have permitted conditions of confinement claims to proceed through a habeas corpus petition and finds that Petitioner may pursue his due process claims through the present Second Amended Petition.

### III.  Legal Standards

Injunctive relief is an "extraordinary remedy and should be granted only in limited circumstances." *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (internal quotation marks omitted) (quoting *Am. Tel. & Tel. Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994). And "[a] party seeking a mandatory preliminary injunction that will alter the status quo bears a particularly heavy burden in demonstrating its necessity." *Acierno v. New Castle Cty.*, 40 F.3d 645, 653 (3d Cir. 1994). The Court may grant an injunction only if a party shows: (i) a likelihood of success on the merits; (ii) that it will suffer irreparable harm if the injunction is denied; (iii) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (iv) that the public interest favors such relief. *Arrowpoint Capital Corp. v. Arrowpoint Asset Mgmt., LLC*, 793 F.3d 313, 318–19 (3d Cir. 2015) (quoting *Kos Pharm.*, 369 F.3d at 708). A party must produce sufficient evidence of all four factors, and the Court must weigh them prior to granting injunctive relief. *Am. Tel. & Tel.*, 42 F.3d at 1427. However, "[a]s a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *Id.* n.8.

6

To meet the first element, the plaintiff need only "make a showing of a reasonable probability, not the certainty, of success on the merits." *SK & F, Co. v. Premo Pharm. Labs., Inc.*, 625 F.2d 1055, 1066 (3d Cir. 1980). Irreparable harm is "potential harm which cannot be redressed by a legal or an equitable remedy following a trial." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). These first two factors are the "most critical," and "[i]f these gateway factors are met, a court then considers the remaining two factors." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). The last two elements—balance of harms and public interest—look at whether imposing the requested injunctive relief will result in a greater harm to the nonmoving party and whether granting the injunction is in the public interest. *See Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998). When the government is the party opposing a preliminary injunction, the balancing of the equities and public interest factors merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

**IV.    Discussion**

As a preliminary matter, in their opposition to the request for a preliminary injunction, Respondents do not present any arguments as to irreparable harm, balance of harms, or public interest. (*See generally* Opp. Br.). At oral argument, counsel for Respondents clarified that Respondents do not concede that those elements are met, but that they rely on their arguments made in opposition to the motion for a temporary restraining order. (Transcript of June 12, 2020 Preliminary Injunction Hearing ("PI Tr.") at 58:16–18). Because those arguments have already been considered and rejected by the Court, and because Respondents put forth no new arguments as to how the Court's analysis should change, the Court adopts its prior analysis and conclusions with respect to irreparable harm, balance of harms, and public interest. (*See* D.E. No. 36 ("TRO

7

Tr.") at 42:15–45:20 & 49:15–51:16).[5]  Thus, the only issue for the Court is whether Petitioner has demonstrated a likelihood of success on the merits of any of his underlying claims.

As the Court did with Petitioner's motion for a temporary restraining order, the Court focuses on Petitioner's substantive due process claim.  Petitioner argues that he is likely to succeed on the merits of his conditions of confinement due process claim because the conditions of confinement at HCCC in combination with the COVID-19 pandemic and Petitioner's specific underlying medical conditions have rendered his confinement punitive.  (*See* Mov. Br. at 19–29).[6]  Traditionally, conditions of confinement claims by sentenced prisoners arise under the Eighth Amendment.  *Helling v. McKinney*, 509 U.S. 25, 27–28 (1993).  However, conditions of confinement claims brought by an immigration detainee are grounded in due process under the Fifth Amendment, not the Eighth Amendment.  *See E.D. v. Sharkey*, 928 F.3d 299, 306–07 (3d Cir. 2019) ("[W]hen pretrial detainees challenge their conditions of confinement, we must consider whether there has been a violation of the Due Process Clause . . . .") (quoting *Hubbard v. Taylor*, 538 F.3d 229, 231 (3d Cir. 2008); *see also Zadvydas*, 533 U.S. at 693.  Under the Due Process Clause, "a detainee may not be punished prior to an adjudication of guilt."  *Sharkey*, 928 F.3d at

---

[5]  Specifically, the Court concluded that Petitioner established that he would suffer irreparable harm based on the combination of the lack of protective policies at Hudson County Correctional Center ("HCCC"), and the dangerousness of the COVID-19 outbreak for this specific Petitioner who has a compromised immune system due to the medication he takes.  (TRO Tr. at 42:15–45:20).  The Court also concluded that the balance of harms and public interest weighed in Petitioner's favor given his immunocompromised state and the potential injury he faced.  (*Id.* at 49:24–50:3).  Respondents' legitimate interests in ensuring that Petitioner does not flee and in protecting the public were adequately addressed by the Court's conditions of Petitioner's release.  (*Id.* at 51:7–10).

[6]  In the Second Amended Petition and in his moving brief, Petitioner makes several allegations and arguments about his conditions of confinement and Respondents' deliberate indifference to Petitioner's medical needs *prior to* the COVID-19 pandemic.  But, as argued in Petitioner's reply brief (Reply Br. at 2–3) and as explained above, the Court's jurisdiction and the propriety of release as a remedy are premised on the extraordinary circumstances presented by COVID-19.  Moreover, at oral argument, Petitioner clarified that any arguments with respect to Petitioner's conditions of confinement or medical care prior to COVID-19 are only intended to serve as background information and do not form the basis of his substantive due process claims.  (PI Tr. at 9:21–13:16).  Thus, the Court's analysis is confined to Petitioner's conditions of confinement during the COVID-19 pandemic.

8

307 (quoting *Bell v. Wolfish*, 441 U.S. 520 (1979)).

The Supreme Court has stated that "[i]n evaluating whether a pretrial detainee's conditions of confinement violate his substantive due process rights, 'the proper inquiry is whether those conditions amount to punishment of the detainee.'" *Umarbaev v. Lowe*, No. 20-0413, 2020 WL 1814157, at *6 (M.D.Pa. Apr. 9, 2020) (quoting *Bell*, 441 U.S. at 535); *see also Stevenson v. Carroll*, 495 F.3d 62, 67 (3d Cir. 2007). Under *Bell*, a "particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose." *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012) (quoting *Stevenson*, 495 F.3d at 68). The Court's "inquiry into whether given conditions constitute 'punishment' must therefore consider the totality of circumstances within an institution." *Hubbard v. Taylor*, 399 F.3d 150, 160 (3d Cir. 2005).

Here, Petitioner does not argue that Respondents have an express intent to punish. (*See* Mov. Br. at 19–20). Nor does Petitioner dispute the Respondents' stated legitimate interest in ensuring Petitioner does not flee or endanger the community. (*See id.* at 33). Thus, the sole issue before the Court is, given Petitioner's medical conditions and the ongoing COVID-19 pandemic, whether Petitioner's conditions of confinement are excessive in relation to the Respondents' legitimate interest. Respondents make two main arguments for why Petitioner's conditions of confinement are not excessive: (i) Petitioner has not put forth enough evidence to demonstrate that he is a high-risk detainee; and (ii) the conditions at HCCC do not rise to the level of punishment. (Opp. Br. at 13–19). The Court addresses each in turn.

First, Petitioner has demonstrated that based on his underlying medical conditions and, more specifically, the medication he takes for those conditions, he is at a high risk of serious illness if he were to contract COVID-19. Whether a particular medical condition renders an individual medically vulnerable to adverse effects from COVID-19 is a question that this Court is hardly equipped to determine without guidance. As such, many district courts, including this one, have turned to the guidance provided by the Centers for Disease Control ("CDC") to draw that line. *See, e.g.*, *Nohasses G. C. v. Decker*, No. 20-4653, 2020 WL 2507775, at *10 (D.N.J. May 15, 2020); *Jose M. C.*, 2020 WL 3249097, at *7 (collecting cases); *Barbecho v. Decker*, No. 20-2821, 2020 WL 1876328, at *2–3 (S.D.N.Y. Apr. 15, 2020); *Ramsundar v. Wolf*, No. 20-0361, 2020 WL 1809677, at *3 (W.D.N.Y. Apr. 9, 2020). As Petitioner points out, the CDC has advised that individuals who are immunocompromised, including those who take immune-weakening medications, are at high risk for severe illness from COVID-19.[7] (Mov. Br. at 10–11 (citing CDC Coronavirus Disease 2019 (COVID-19), *People Who Are at Higher Risk*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.); *see also* Opp. Br. at 18 ("The CDC acknowledges that immune weakening medications may put individuals in the category of immunocompromised"). Plaintiff has put forth enough evidence to demonstrate that he falls within in this category of high-risk individuals. Specifically, to treat his underlying conditions of Crohn's disease and ulcerative colitis, Petitioner takes a medication called Sulfasalazine. (Mov. Br. at 10). Petitioner cites to several sources suggesting that this

---

[7] The Court notes that the CDC's guidelines are in flux and have been updated since the parties have briefed and argued the issues. *See* CDC Coronavirus Disease 2019 (COVID-19), *People Who Need to Take Extra Precautions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index html (last updated June 25, 2020). But any arguments regarding the CDC's updated guidance are not before the Court, and thus, the Court is constrained to render its Opinion based on the arguments and evidence in the record. As stated in the Court's accompanying Order, Respondents are not prevented from seeking a modification of the Court's Order if Respondents believe that changed evidence or circumstances require such a modification.

medication increases the risk of infections by lowering the body's immunity and/or reducing the number of disease-fighting white blood cells in the body leading to a higher risk for infections. (*Id.* at 9–10). Petitioner also relies on a sworn declaration from Dr. Laura Krinsky, who reviewed Petitioner's medical records and opines that Petitioner's medical conditions subject him to a high risk of severe illness or death if exposed to COVID-19. (D.E. No. 49-1 at 3–4).[8]

Respondents' only argument with respect to Petitioner's medication relies on select language in Petitioner's opening brief suggesting that the medication ***may*** make Petitioner immunocompromised. (Opp. Br. at 17–18).[9] Relying on that language, Respondents argue that Petitioner's claim is merely speculative. But this argument does not meaningfully dispute the studies presented by Petitioner or Dr. Krinsky's medical opinion. Nor are the cases relied on by Respondents on point. *See, e.g.*, *United States v. Porter*, No. 18-68, 2020 WL 1984318, at *5 (W.D. Pa. Apr. 27, 2020) (addressing a criminal defendant's motion for release pending sentencing and making no mention of an immuno-suppressant medication); *United States v. Wright*, No. 18-635, 2020 WL 1694298, at *6 (N.D. Tex. Apr. 7, 2020) (denying a criminal defendant's motion for temporary release, concluding that any stated medication conditions alone were not enough to meet the burden imposed by 18 U.S.C. § 3142(i)); *United States v. Whitfield*, No. 19-146, 2020 WL 1976233, at *3 (E.D. Mo. Apr. 9, 2020), *report and recommendation adopted*, No. 19-0146, 2020 WL 1975237 (E.D. Mo. Apr. 24, 2020) (concluding that a prisoner's potential susceptibility

---

[8] As Petitioner does in the Second Amended Petition, Dr. Krinsky opines on Petitioner's medical conditions and conditions of confinement prior to COVID-19. (*See generally* D.E. No. 49-1). The Court only considers those opinions to the extent they serve as background information for the Court's analysis of Petitioner's conditions of confinement during the COVID-19 pandemic.

[9] Respondents make additional arguments with respect to some of Petitioner's other conditions, and why those conditions alone do not put Petitioner at a high risk of serious illness from COVID-19, but because the Court focuses on Petitioner's immunocompromised state, it does not evaluate those other arguments.

11

to succumbing to the virus if contracted is not an exceptional circumstance that requires *release while he awaits sentencing*). Accordingly, based on CDC guidance and the undisputed record here, the Court agrees that this Petitioner is at a high risk of severe illness from COVID-19 because of the immunocompromising medication he takes for his underlying medical conditions. *See, e.g.*, *Durel B. v. Decker*, No. 20-3430, 2020 WL 1922140, at *8 (D.N.J. Apr. 21, 2020) (granting a motion for temporary restraining order and explaining that "given the current pandemic and Petitioner's compromised immune system . . . the conditions of Petitioner's confinement are excessive in relation to Respondents' purpose"); *Durel B. v. Decker*, No. 20-3430, 2020 WL 2731107, at *1 (D.N.J. May 22, 2020) (converting temporary restraining order to a preliminary injunction).

Second, Respondents' argument with respect to the conditions and COVID-19 policies at HCCC fare no better. As discussed at oral argument, the Court is faced with seemingly conflicting declarations regarding the conditions at HCCC. (*Compare* D.E. No. 47-5 ("Edwards Decl."), *with* D.E. Nos. 45-5, 45-6, 45-7 & 45-8). However, the Court need not resolve any discrepancies between these declarations because, considering Edwards' declaration on its face, the Court finds that the current conditions at HCCC—for this specific, immunocompromised Petitioner—are excessive in light of the purpose of his detainment.

Preliminarily, the number of positive cases among staff, detainees, and inmates at HCCC is alarming. According to the Edwards declaration, as of June 1, 2020, 17 ICE detainees, 27 county and federal inmates, and 102 staff members had tested positive for the virus since the outbreak began. (Edwards Decl. ¶ 20). Although many of these individuals have recovered, there is no evidence to suggest that the facility is out of the woods. Moreover, with respect to

12

how this immunocompromised Petitioner would be protected if he were incarcerated at HCCC, the Edwards declaration still falls short.[10] To start, there is no guarantee that Petitioner would be placed in an individual cell or housed in a separate unit for those at a high risk of developing serious illness or death from COVID-19. Although the Edwards declaration mentions that those on the CDC's high-risk list are "housed by themselves," (*id.* ¶ 25), based on Respondents' arguments it would appear that they would not consider this Petitioner for such housing (*see, e.g.*, Opp. Br. at 14). In any event, there is no indication as to what it means that these detainees are "housed by themselves," and whether that means they do not share cells or common spaces with other individuals, or how any separate housing protects them from COVID-19 exposure. Moreover, although the Edwards declaration indicates that all staff has Personal Protective Equipment, including masks, gloves, and eye protection, there is no indication they are required to wear, or in fact consistently wear, such equipment when coming into contact with inmates or detainees. (Edwards Decl. ¶ 13(c)). Similarly, although the "entire inmate and detainee population has been provided surgical masks," there is no indication that they are required to wear them around others, or that their masks are being replaced as necessary. (*Id.* ¶ 25). Considering the number of inmates, detainees, and staff who have tested positive for COVID-19, and the Petitioner's supporting declarations about staff members and detainees not using masks, or using dirty masks, Respondents' silence on this issue is alarming. In sum, although the Court acknowledges that ICE and HCCC have taken a number of steps to help stop the spread of COVID-19, the Undersigned also agrees with other judges in this district that, for certain high-risk

---

[10] The Court incorporates its prior analysis of the conditions at HCCC as to those portions of the Edwards declaration that remain unchanged. (*See* TRO TR. at 43:14–45:20 & 48:16–49:11).

13

individuals such as Petitioner, these steps are not enough. *See, e.g.*, *Thierry B. v. Decker*, No. 20-4035, 2020 WL 3074006, at *14 (D.N.J. June 10, 2020) ("Due to their conditions of confinement at HCCC where they are unable to practice social distancing or adequate hygiene and their particular medical vulnerabilities, the Petitioners in this action have shown a likelihood of success on the merits of their constitutional claim that their detention at HCCC during the COVID-19 pandemic amounts to punishment."); *Robenson J. v. Decker*, No. 20-5141, 2020 WL 2611544, at *7 (D.N.J. May 22, 2020) ("Despite the commendable efforts by HCCF, it unfortunately seems that the danger to this Petitioner remains great."); *Durel B.*, 2020 WL 2731107, at *2 ("Although the efforts of HCCC have been substantial and sincere, the number of cases continues to climb and difficulties adhering to CDC guidelines may still exist. Meanwhile, Petitioner's medical condition remains the same.").

Accordingly, although Respondents have a legitimate purpose in detaining Petitioner, his detention is rendered excessive in light of his specific immunocompromised state and the lack of specific actions being taken to protect medically compromised individuals such as Petitioner from contracting COVID-19. Accordingly, the Court finds that Petitioner has shown a substantial likelihood of success on the merits of his conditions of confinement due process claim, and that the balance of all factors weighs in favor of a preliminary injunction. However, for the same reasons discussed in the Court's April 14, 2020 ruling, the Court will continue to impose a number of conditions on Petitioner's release.

## V. Conclusion

For the reasons discussed above, Petitioner's request to convert the temporary restraining

order to a preliminary injunction is GRANTED.   An appropriate order accompanies this Opinion.


                                                              *s/ Esther Salas*
                                                              **Esther Salas, U.S.D.J.**